## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| April Beck,<br><br>Plaintiff,<br><br>—vs—<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br>a Delaware Corporation,<br><br>Defendant. | **Case No.:** _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND** |

COMES NOW the Plaintiff, April Beck, ("Plaintiff") by and through her attorneys of record, asserting claims against the Defendant, Chipotle Mexican Grill, Inc., a Delaware Corporation, ("Defendant" or "Chipotle"), and states and alleges as follows:

### I.   PARTIES

1. The Plaintiff is a resident of Minneapolis, Minnesota, and is a citizen of the State of Minnesota.

2. The Defendant, Chipotle Mexican Grill, Inc., is a corporation organized and existing under the laws of State of Delaware. Chipotle, together with its subsidiaries (collectively the "Company"), develops and operates fast-casual, fresh Mexican food restaurants. As of June 30, 2015, the Company operated 1,847 Chipotle restaurants throughout the United States. At all times relevant to the allegations contained in this Complaint, the Company was registered to do business, and did conduct business, in the State of Minnesota. The Company manufactured and sold the food products that are the subject of this action at its restaurant location in Minneapolis, Minnesota.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the Defendant has certain minimum contacts with the State of Minnesota such that the maintenance of the suit in this District does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the District of Minnesota is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims and causes of action occurred in this judicial district, and because the Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### The *Salmonella* Newport Outbreak

5. Forty-five (45) cases of *Salmonella* Newport infection have been reported to the Minnesota Department of Health (MDH) since Wednesday, September 2, 2015. Since many cases of salmonellosis do not seek health care and get tested, the number of ill people that are part of this outbreak is likely to be larger than the identified number of cases. Consequently, health officials want to bring this outbreak to the attention of people who have become ill with symptoms of salmonellosis but who have not yet consulted a health care provider. These people should mention this outbreak to their health care provider should they consult one.

6. The investigation to date has found that the 45 cases were all infected with *Salmonella* Newport bacteria that have matching or very similar DNA fingerprints. Of the 34 people who have been interviewed to date, 32 ate or likely ate at 17 different Chipotle restaurant locations. Most of the restaurant locations are in the Twin Cities metro area, with one in St. Cloud and one in Rochester. Their meal dates range from August 16 to August 26, 2015 and they became ill between August 20 and August 29, 2015.

7. The Minnesota cases range in age from 15 to 67 years and are from eight metro and greater Minnesota counties; 56 percent are male. Five cases have been hospitalized; all are recovering.

8. Investigators from MDH and the Minnesota Department of Agriculture are working on identifying a specific food item source of the outbreak; in the meantime, Chipotle has changed the source of the suspect produce item under investigation.

## *Salmonella*

9. The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans. The taxonomy and nomenclature of *Salmonella* have changed over the years and are still evolving. Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document

called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

10. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

**Medical Complications of Salmonellosis**

11. The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized at another site distant from the affected joints. The predominant site of the infection is the gastrointestinal tract. Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

12. The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria. In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination). *Id.* This triad of symptoms is called Reiter's Syndrome. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary infections. The most common gastrointestinal

bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*. A triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, although not all three symptoms occur in all affected individuals.

13. *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain. In one recent study, over one-third of IBS sufferers had had IBS for more than ten years, with their symptoms remaining fairly constant over time. IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

**The Plaintiff's Illness**

14. The Plaintiff ate at the Defendant's restaurant at 2600 Hennepin Ave. S., Minneapolis on August 10, 2015.

15. Five days later, the Plaintiff began to develop mild stomach cramping and diarrhea.

16. Over the next few days, the Plaintiff's symptoms grew progressively worse. And when she could no longer stand the discomfort, she was taken to the hospital on August 23, 2015.

17. At the hospital, the Plaintiff presented with severe stomach cramping and diarrhea. She was treated with IV fluid for severe dehydration.

18. The Plaintiff was hospitalized on August 23, 2015, where she remained until September 1, 2015. However, the Plaintiff's release was short-lived and she was re-admitted to the hospital the following day because of blood clots in both arms.

19. The Plaintiff was not well enough to be discharged from the hospital, for a second time, until September 4, 2015.

20. Following her illness, the Plaintiff was contacted by the Minnesota Department of Health. It was confirmed that her infection was caused by *Salmonella* Newport and was recognized as part of the outbreak associated with the Defendant's restaurant.

21. And even now, after her release, the Plaintiff continues to suffer from bouts of diarrhea as well as continued blood clotting.

## IV. CAUSES OF ACTION

### Strict Liability—Count I

22. The Defendant was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

23. The adulterated food product that the Defendant manufactured, distributed, and/or sold was, at the time it left the Defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

24. The adulterated food product that the Defendant manufactured, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The adulterated food product that the Defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the Plaintiff.

25. The Defendant owed a duty of care to the Plaintiff to design, manufacture, and/or sell food that was not adulterated, which was fit for human consumption, that was

reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The Defendant breached this duty.

26. The Defendant owed a duty of care to the Plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The Defendant breached this duty.

27. Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the Defendant manufactured, distributed, and/or sold.

### Breach of Warranty—Count II

28. The Defendant is liable to the Plaintiff for breaching express and implied warranties that it made regarding the adulterated food product that the Plaintiff purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, Defendant expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

29. Plaintiff alleges that the *Salmonella*-contaminated food that the Defendant sold to them would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

30. Plaintiff alleges that the *Salmonella*-contaminated food that the Defendant sold to them was not fit for the uses and purposes intended, *i.e.* human consumption, and

that this product was therefore in breach of the implied warranty of fitness for its intended use.

31.  As a direct and proximate cause of the Defendant's breach of warranties, as set forth above, the Plaintiff sustained injuries and damages in an amount to be determined at trial.

### **Negligence—Count III**

32.  The Defendant owed to the Plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of its food product, the breach of which duty would have prevented or eliminated the risk that the Defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The Defendant breached this duty.

33.  The Defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The Plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

34.  The Defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so, and was therefore negligent.

35. The Defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so, and was therefore negligent.

36. As a direct and proximate result of the Defendant's acts of negligence, the Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence Per Se—Count IV

37. The Defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*), and the Minnesota Food Law (Minn. Stat. § 31.01 *et seq.*)

38. The Defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

39. As a direct and proximate result of conduct by the Defendant that was negligent *per se*, the Plaintiff sustained injury and damages in an amount to be determined at trial.

### V.   DAMAGES

40. The Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendant, in

an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment against Defendant as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the Plaintiff as a result of the Defendant's conduct;

B. Ordering statutory prejudgment interest;

C. Awarding Plaintiff reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

D. Granting all such additional and/or further relief as this Court deems just and equitable.

Dated: 9/11/15

JARDINE, LOGAN & O'BRIEN, P.L.L.P.

By: *Vicki Hruby*
JOSEPH E. FLYNN (A.R.#165712)
VICKI A. HRUBY (A.R.#0391163)
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Telephone (651) 290-6500

AND

MARLER CLARK, LLP, PS
William D. Marler (WSBA # 17233)
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 346-1888
(Admission *Pro Hac Vice* Pending)

Attorneys for Plaintiff